**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| KENNETH MCGEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 4:08-CV-60 (WLS) |
| | : | |
| COCA COLA BOTTLING COMPANY | : | |
| CONSOLIDATED, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## <u>ORDER</u>

Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 20). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED**.

## <u>PROCEDURAL HISTORY</u>

Plaintiff, a black male, filed his Complaint against Defendant, his employer, on May 13, 2008. (Doc. 1). Count I alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Doc. 1 at ¶¶ 1, 18-22). There is no Count II. (*See generally* Doc. 1). Count III asserts retaliation in violation of 42 U.S.C. § 2000e, *et seq.* (Doc. 1 at ¶¶ 23-25). Count IV asserts negligent retention and supervision. (Doc. 1 at ¶¶ 26-31). Count V alleges intention infliction of emotional distress. (Doc. 1 at ¶¶ 32-35). Count VI claims punitive damages. (Doc. 1 at ¶¶ 36-38). Count VII claims attorney's fees and expenses. (Doc. 1 at ¶¶ 39-40). Attached to the Complaint are Plaintiff's September 13, 2007 EEOC Charge of Discrimination (Doc. 1-3) and February 13, 2008 EEOC Right to Sue Letter (Doc. 1-4).

On July 27, 2009, the Parties filed a Stipulation of Dismissal, agreeing to dismiss with prejudice Count IV – for negligent retention and supervision – and Count V – for intentional infliction of emotional distress. (Doc. 16). The Court approved the Stipulation of Dismissal by Order of July 29, 2009. (Doc. 16-2). The remaining claims in dispute are thus Counts I, III, VI, and VII, which assert Title VII discrimination and retaliation and request punitive damages and attorney's fees and expenses.

Defendant filed its Motion for Summary Judgment on October 28, 2009. (Doc. 20). Because Plaintiff is represented by legal counsel, no *pro se* notice of the filing of a dispositive motion was issued by the Court. The version of the Local Rules in effect on October 28, 2009 provided Plaintiff with twenty (20) days to respond to Defendant's Motion for Summary Judgment. M.D. Ga. Local R. 7 (2009). This period expired on November 17, 2009, with no response being filed by Plaintiff. (*See generally* Docket).

After a span of approximately nine (9) months, during which time Plaintiff filed no response, the Court, citing Eleventh Circuit precedent cautioning against punishing litigants for their counsel's errors, *e.g.*, Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986), ordered Plaintiff to file a Response within fourteen (14) days of the August 26, 2010 Order. (Doc. 22). The Court specifically noticed Plaintiff that "[s]aid Response shall comply with the Federal Rules of Civil Procedure and the current Local Rules of this Court, including Local Rules 7.4 and 56." (Doc. 22 at 3).

Plaintiff filed his Response on the deadline date, September 9, 2010. (Doc. 23). Although the document was erroneously filed, prompting the Clerk of Court to provide notice that refiling was necessary (Doc. 24), the Court entered an Order on the Docket stating that the Response was accepted as timely and providing Defendant a deadline of September 23, 2010 in

which to file a Reply.  (Docket at 09/10/2010).  Plaintiff refiled his Response on September 20,

2010.  (Doc. 25).  Defendant filed a Reply on the deadline date, September 23, 2010.  (Doc. 26).

The instant Motion for Summary Judgment (Doc. 20) is thus fully briefed and ripe for

ruling.

**FACTUAL SUMMARY**

## I.      Introduction

The following summary of relevant facts contains the undisputed facts derived from both

(i) the Complaint (Doc. 1) and Defendant's Answer (Doc. 6), and (ii) Defendant's Statement of

Material Facts Over Which There is No Genuine Dispute (Doc. 20-5) that was submitted

pursuant to Local Rule 56.[1]  Because Plaintiff failed to submit any response to Defendant's

Statement of Material Facts, all of Defendant's stated material facts that find support in the

record are deemed admitted.[2]  Where relevant, the following factual summary also contains

undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials

on file, and any affidavits submitted, all of which are construed in a light most favorable to

Plaintiff as the nonmoving party.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986);

Fed. R. Civ. P. 56.

## II.     Relevant Facts

Plaintiff, Kenneth McGee, is a black male United States citizen and resident of Georgia.

(*Compare* Doc. 1 at ¶ 6 *with* Doc. 16 at ¶ 6).  Defendant, Coca Cola Bottling Company

Consolidated, operates in Columbus, Georgia, and meets the definition of an "employer" for

Title VII purposes.  (*Compare* Doc. 1 at ¶ 7 *with* Doc. 16 at ¶ 7).  Defendant employs more than

---

[1]        See *infra* discussion of Local Rule 56.
[2]        See *infra* discussion of Local Rule 56.

100 persons and is engaged in an industry affecting commerce.  (*Compare* Doc. 1 at ¶ 8 *with* Doc. 16 at ¶ 8).

Defendant's policy is not to discriminate against its employees and to promote a work environment free of discrimination.  (Doc. 20-5 at ¶ 3).  Defendant does not tolerate discrimination on the basis of race.  (Doc. 20-5 at ¶ 3).  If an employee believes that he has been discriminated against, Defendant's policy directs the employee to contact his manager or a member of human resources.  (Doc. 20-5 at ¶ 3).

Plaintiff's employment at Defendant's plant in Columbus, Georgia, began on November 30, 2005.  (Doc. 20-5 at ¶¶ 1, 5, 21; *compare* Doc. 1 at ¶ 12 *with* Doc. 16 at ¶ 12).  Plaintiff acknowledged receipt of Defendant's handbook that included the anti-discrimination policies described above.  (Doc. 20-5 at ¶ 3; Def.'s Ex. 5, Doc. 20-7 at 6; Def.'s Ex. 12, Doc. 20-7 at 26-28).  Defendant hired Plaintiff as a Bulk Merchandiser, which is an entry-level position.  (Doc. 20-5 at ¶ 1; *compare* Doc. 1 at ¶ 12 *with* Doc. 16 at ¶ 12; Def.'s Ex. 4, Doc. 20-7 at 5).  As a Bulk Merchandiser, Plaintiff would stock the shelves and fill displays at Defendant's customers, such as Publix.  (Doc. 20-5 at ¶ 2).  Plaintiff would go to the customer's location, find the product that was already there, and stock the shelves and displays.  (Doc. 20-5 at ¶ 2).

Defendant has a job hierarchy at its plant in Columbus, Georgia.  (Doc. 20-5 at ¶ 5).  At the bottom of the job hierarchy is the entry-level position of Bulk Merchandiser.  (Doc. 20-5 at ¶ 5).  The next level up in the job hierarchy contains two positions: Tele-Sell Representative and Full Service Representative.  (Doc. 20-5 at ¶ 6).  The Tele-Sell Representative is responsible for delivering to and servicing smaller customers, such as doctors' or lawyers' offices and small stores like Blockbuster Video.  (Doc. 20-5 at ¶ 6).  The Full Service Representative is responsible for stocking vending machines.  (Doc. 20-5 at ¶ 6).  While Full Service

Representatives have little, if any, contact with customers because their duties only entail stocking vending machines, Tele-Sell Representatives have direct contact with customers and do telephone sales, calling and meeting their customers to ensure that the customers are receiving the correct type and amount of product. (Doc. 20-5 at ¶ 6).

In the summer of 2006, Plaintiff applied for and was promoted to the position of Full Service Representative. (Doc. 20-5 at ¶ 4). As a Full Service Representative, Plaintiff was responsible for stocking vending machines and collecting money from the vending machines. (Doc. 20-5 at ¶ 4). Plaintiff would drive to those vending machines in one of Defendant's trucks. (Doc. 20-5 at ¶ 4). Plaintiff would stock machines in prisons, banks, schools, auto mechanic shops, and similar businesses. (Pl.'s Aff., Doc. 23 at ¶ 4). Every day, Plaintiff would talk with customers about placement of new vending machines, replacement of old vending machines, and commission checks. (Pl.'s Aff., Doc. 23 at ¶ 4).

In Defendant's job hierarchy, the next level above the co-equal positions of Full Service Representative and Tele-Sell Representative is Cool-Lift Representative. (Doc. 20-5 at ¶ 7). The Cool-Lift Representative delivers products to home market stores, including convenience stores, drug stores, and independent grocery stores. (Doc. 20-5 at ¶ 7). Cool-Lift Representatives drive the product to the stores and meet with the store managers. (Doc. 20-5 at ¶ 7). Unlike Full Service Representatives, then, Cool-Lift Representatives necessarily interact with customers because vending machines are not involved. (Doc. 20-5 at ¶ 7).

The next level in the job hierarchy above Cool-Lift Representative is Delivery Route Specialist. (Doc. 20-5 at ¶ 8). The Delivery Route Specialist position combines all of the responsibilities of the Full Service, Tele-Sell and Cool-Lift Representative positions, plus is

asked to fill in for the Pre-Sell Account Manager if the person holding that position is absent. (Doc. 20-5 at ¶ 8).

Finally, the highest level in the job hierarchy, before entering the managerial jobs, is Pre-Sell Account Manager. (Doc. 20-5 at ¶ 9). The Pre-Sell Account Manager is required to manage and sell to existing and prospective customers. (Doc. 20-5 at ¶ 9). Due to these responsibilities, Defendant requires that applicants for the Pre-Sell Account Manager position have a proven sales record, selling skills, and experience in actively soliciting new and existing accounts. (Doc. 20-5 at ¶ 9). Defendant also strongly prefers applicants with experience in Defendant's conventional or home market distribution. (Doc. 20-5 at ¶ 9). The Pre-Sell Account Manager position also requires strong trade knowledge and the ability to effectively give sales presentations. (Doc. 20-5 at ¶ 9). Additionally, applicants are required to have a proven sales record with professional sales experience at Defendant or in another related industry. (Doc. 20-5 at ¶ 9). The Pre-Sell Account Manager position requires working with convenience store account owners and managers. (Doc. 20-5 at ¶ 9).

A Pre-Sell Account Manager opening was posted on May 4, 2007, and internal applicants were to submit their applications electronically via the Internet. (Doc. 20-5 at ¶¶ 10, 14; Def.'s Ex. 6, Doc. 20-7 at 7 to 8). The posting stated that the following skills and characteristics were required or preferred:

> Must have a proven sales record at Coca-Cola Bottling Co. Consolidated (CCBCC) or other related industry with professional sales experience preferred.
>
> Must have successful selling skills and experience in actively soliciting new accounts & selling in new packages, new products, promotions & additional space.
>
> Experience in Conventional or Home Market at CCBCC distribution is strongly preferred.

Must have a strong record of excellent merchandising & quality control is required. Knowledge of appropriate displaying & space inventory is strongly preferred.

Must have basic Computer skills.

Must have excellent communication skills and be able to work with all levels of management & route sales personnel. Must maintain a professional image at work & in the trade.

Must have experience in planning, preparing & presenting effective sales presentations.

Strong trade knowledge of various Company products by size, type, package, and wholesale prices is required.

Excellent prioritizing & decision-making skills are required. Must display strong organizational and planning skills.

A candidate should have experience in placing & writing orders.

A candidate must display a great deal of enthusiasm & have a drive to succeed.

High School diploma or equivalent is required. 4 year college degree is preferred. Additional sales training or education is also desired.

Must have an excellent safety record. Must have a valid driver's license with an excellent driving record (A 7 year Motor Vehicle Record will be reviewed).

(Def.'s Ex. 6, Doc. 20-7 at 7 to 8).

Plaintiff applied for the May 4, 2007 Pre-Sell Account Manager position. (Doc. 20-5 at ¶ 10). Also applying for the position was Steve Morris, who is white. (Doc. 20-5 at ¶ 6, 10). Plaintiff and Steve Morris had been Full Service Representatives and had never been Tele-Sell Representatives. (Doc. 20-5 at ¶ 6). While Plaintiff had never worked as a Cool-Lift Representative (Doc. 20-5 at ¶ 7) or a Delivery Route Specialist (Doc. 20-5 at ¶ 8), Morris had worked both as a Cool-Lift Representative (Doc. 20-5 at ¶ 7) and a Delivery Route Specialist (Doc. 20-5 at ¶ 8). Because Morris was a Delivery Route Specialist at the time he applied for the Pre-Sell Account Manager opening, he was applying for the next position up in the job

hierarchy. (Doc. 20-5 at ¶ 10). Plaintiff, on the other hand, was a Full Service Representative when he submitted his application, and was thus attempting to skip over the Cool-Lift Representative and Delivery Route Specialist positions by applying directly for the Pre-Sell Account Manager position. (Doc. 20-5 at ¶ 10).[3]

Although "[a]s a Full Service Representative" Plaintiff "talked to customers everyday [sic]" (Pl.'s Aff. at ¶ 4), Plaintiff lacked any sales experience with Defendant. (Doc. 20-5 at ¶ 11). Regarding outside sales experience, Plaintiff had made sales presentations to customers as a Sales Associate at Home Depot in Columbus, Georgia, from June 1999 to February 2001, and as a Sales Associate at an MCI Retail kiosk in a Sam's Wholesale store from March to August 1997. (Def.'s Ex. 3, Doc. 20-7 at 2; Pl.'s Aff. at ¶ 9). While employed with Defendant, Plaintiff had only occupied the Bulk Merchandiser and Full Service Representative positions. (Doc. 20-5 at ¶ 13). Morris, on the other hand, had been a Delivery Route Specialist for Defendant for three years upon submitting his application for the Pre-Sell Account Manager opening. (Doc. 20-5 at ¶ 13). Both his current Delivery Route Specialist and previous Cool-Lift Representative positions had provided Morris with customer experience. (Doc. 20-5 at ¶ 13). And as a Delivery Route Specialist, Morris had superior knowledge of Defendant's home market – the convenience, drug, and independent grocery stores – because he was responsible for knowing all of the sales and delivery positions. (Doc. 20-5 at ¶ 13). Plaintiff has a Bachelor of Science degree in Business Management from the University of West Alabama. (Def.'s Ex. 3, Doc. 20-7 at 1). Morris

---

[3] Plaintiff's Affidavit asserts that an individual named Rodney Quesonall was promoted from Bulk Merchandiser directly to Pre-Sell Account Manager in 2006, despite lacking any outside sales experience. (Pl's Aff. at ¶¶ 5, 8). Plaintiff's Affidavit asserts that the Quesonall facts show that Defendant "does not follow its policy and procedure." (Pl.'s Aff. at ¶ 6). The Court does not credit Plaintiff's assertion, because the Court's review of the record shows no evidence regarding an individual named Rodney Quesonall or his alleged promotion from Bulk Merchandiser to Pre-Sell Account Manager in 2006. Plaintiff provides no citation to the portions of the record that support these claims.

attended Chattahoochee Valley Community College for two years. (Downs Decl., Ex. 1, Doc. 20-8 at 13).

Ronald Downs, who is white, is Defendant's Territory Sales Manager. (Doc. 20-5 at ¶ 15). Downs made the ultimate hiring decision regarding the Pre-Sell Account Manager opening. (Doc. 20-5 at ¶ 15). Downs hired Morris. (Doc. 20-5 at ¶ 15). Downs made the decision to hire Morris based on Morris's sales experience, experience at Defendant, experience with customers, nearly nine years of tenure with Defendant, current position being just one level below the Pre-Sell Account Manager level in the job hierarchy, and recognition received from Morris's previous supervisors. (Doc. 20-5 at ¶ 15). Downs had reviewed Plaintiff's application. (Doc. 20-5 at ¶ 16). Plaintiff's application indicated only one-and-one-half years of tenure with Defendant, no sales experience, and no experience as a Cool-Lift Representative and Delivery Route Specialist. (Doc. 20-5 at ¶ 16). Downs did not believe that Plaintiff was as qualified as Morris for the Pre-Sell Account Manager opening. (Doc. 20-5 at ¶ 16).

On July 18, 2007, Plaintiff was informed that he was not promoted. (*Compare* Doc. 1 at ¶ 13 *with* Doc. 16 at ¶ 13). Downs instructed Mark Ellison, who is white and was Plaintiff's direct supervisor at the time, to tell Plaintiff that he lacked the necessary sales experience for the Pre-Sell Account Manager position. (Doc. 20-5 at ¶ 16). Downs told Plaintiff that Plaintiff should apply for positions that would give Plaintiff the sales experience needed for the Pre-Sell Account Manager position, such as the Tele-Sell Representative, Cool-Lift Representative, and Delivery Route Specialist positions. (Doc. 20-5 at ¶ 16). Plaintiff never applied for those positions. (Doc. 20-5 at ¶ 17).

On September 13, 2007, Plaintiff filed his first EEOC Charge of Discrimination, alleging race discrimination in the decision to not select him for the Pre-Sell Account Manager opening

announced on May 4, 2007. (Doc. 20-5 at ¶ 18; *compare* Doc. 1 at ¶ 10 *with* Doc. 16 at ¶ 10). Plaintiff received a Right to Sue Letter from the EEOC shortly after February 13, 2008. (Doc. 1-4). Plaintiff filed his Complaint against Defendant on May 13, 2008. (Doc. 1).

On November 12, 2008, Plaintiff filed his second EEOC Charge of Discrimination, claiming that Defendant had retaliated against Plaintiff for the filing of Plaintiff's first EEOC Charge of Discrimination. (Doc. 20-5 at ¶ 24). Plaintiff claimed that the inventory on his delivery truck was inspected twice on one occasion in September 15, 2008, and that his routes were longer than his co-workers' routes. (Doc. 20-5 at ¶ 24; Def.'s Ex. 13, Doc. 20-7 at 29).

Defendant employs a number of internal audit controls to be certain that daily truck inventory is accurate. (Doc. 20-5 at ¶ 19). Each morning, the warehouse initially checks the inventory of the side-load trucks. (Doc. 20-5 at ¶ 19). The trucks have overhead rolling doors on the side of the vehicles and are loaded and unloaded on the side instead of through the rear. (Doc. 20-5 at ¶ 19). After the warehouse checks the inventory, and prior to departing the facility in the morning, the route driver verifies the truck inventory by comparing the inventory with the load sheet. (Doc. 20-5 at ¶ 19). Defendant also employs an internal audit requirement that the Columbus branch must randomly double-check truck inventories. (Doc. 20-5 at ¶ 20). The random inventory check occurs each day of the operation. (Doc. 20-5 at ¶ 20). Delivery supervisors use playing cards with one of the playing cards marked with an "X." (Doc. 20-5 at ¶ 20). The driver who pulls the playing card marked with the "X" is the driver whose vehicle is inventoried a second time. (Doc. 20-5 at ¶ 20). Thus, by random chance, a route driver will be selected for the random inventory double-check. (Doc. 20-5 at ¶ 20). Plaintiff acknowledges that other employees' inventory is randomly checked a second time. (Doc. 20-5 at ¶ 20).

Defendant's Columbus, Georgia branch has six regular full-service routes, which are scheduled to run five days per week. (Doc. 20-5 at ¶ 21). In the summer and fall of 2008, Plaintiff was primarily assigned to Route 504, which is known as the "country route" or "Eufala route." (Doc. 20-5 at ¶ 21). Plaintiff's mileage was the highest average mileage among Full Service Representative routes because it was in rural areas. (Doc. 20-5 at ¶ 23).

In the spring and summer of 2008, Defendant's office in Charlotte, North Carolina, changed all of the Full Service Representative routes using a computer system called Vendware. (Doc. 20-5 at ¶ 22). The computer system, which was completely responsible for establishing the new routes, used the following variables in creating the new routes: mileage, stops, amount of product needed in each vending machine per week, and several other objective factors. (Doc. 20-5 at ¶ 22). Defendant used the objective computer system in hopes that it would help Defendant be more efficient. (Doc. 20-5 at ¶ 22). Specifically, Defendant was trying to establish an arrangement allowing the most deliveries to be made with the least amount of labor hours. (Doc. 20-5 at ¶ 22). All Full Service Representatives' routes during the summer and fall of 2008 were established by the Vendware computer program. (Doc. 20-5 at ¶ 22).

Defendant generally attempts to create routes that result in approximately 50-hour work weeks. (Doc. 20-5 at ¶ 23). From August 2008 to January 2009, Plaintiff averaged 10.67 hours per day. (Doc. 20-5 at ¶ 23) During this time period, four of the route drivers average more hours than Plaintiff, and only one averaged fewer hours than Plaintiff. (Doc. 20-5 at ¶ 23). Plaintiff could have applied for other routes if he was disappointed with his routes, because several other routes were available in 2008 and 2009. (Doc. 20-5 at ¶ 23). Plaintiff chose not to apply for any other routes. (Doc. 20-5 at ¶ 23).

**DISCUSSION**

**I.     Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.  Hoffman v. Allied Corp., 912 F.2d 1379, 1383 (11th Cir. 1990).  A fact is "material" if it is a legal element of the claim under the applicable substantive law and it might affect the outcome of the nonmoving party's case.  Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).  A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim.  *See* Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Celotex Corp., 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

_Corp._, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the [trier of fact] could reasonably find for that party." _Walker v. Darby_, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing _Anderson v. Liberty Lobby_, 477 U.S. 242, 251 (1986)). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." _Ellis v. England_, 432 F.3d 1321, 1326 (11th Cir. 2005).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. _Celotex Corp._, 477 U.S. at 322-23; _Allen_, 121 F.3d at 646. "Inferences from the nonmoving party's 'specific facts' as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are permissible under the governing substantive law." _Mize v. Jefferson City Bd. of Educ._, 93 F.3d 739, 743 (11th Cir. 1996). The Court must grant summary judgment if it finds there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.    Local Rule 56

Because Defendant filed its Motion for Summary Judgment (Doc. 20) on October 28, 2009, before the most recent version of the Local Rules took effect, the Court will apply Local Rule 56 as it read before the December 1, 2009 amendment. Local Rule 56 requires the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in the respondent's statements shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. Civ. R. 56 (2009). Here, Defendant properly filed its Motion for Summary Judgment in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, including Local Rule 56's requirement of a "statement of the material facts to which the movant contends there is no genuine issue to be tried." (*See* Docs. 20, 20-5). Plaintiff submitted a response brief on September 9, 2010 (s*ee* Doc. 23), but omitted a separate statement of disputed material facts pursuant to Local Rule 56 – despite the fact that the Court's August 26, 2010 Order for Plaintiff to file a Response specifically referred Plaintiff to Local Rule 56 (Doc. 22 at 3). Because Plaintiff failed to properly dispute Defendant's material facts with the specificity required by the Local Rules, all of Defendant's material facts provided in its Statement of Material Facts (Doc. 20-5) are deemed admitted by operation of Local Rule 56.

Most jurisdictions state uncategorically that local rules operate with the force of substantive law. *See, e.g.*, Link v. Wabash R.R. Co., 291 F.2d 542 (7th Cir. 1961). However, the Eleventh Circuit holds that the local rules' enforcement must be tempered by the circumstances, Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923 (11th Cir. 1986), and a local rule cannot eviscerate a statutory right or conflict with the federal rules. Villano v. City of Boynton Beach, 254 F.3d 1302, 1310-11 (11th Cir. 2001). In the Eleventh Circuit, a district court cannot grant a motion for summary judgment as a sanction for failure to properly respond. *See* Trustees of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1039 (11th Cir. 2004). Thus, even if the Court were inclined to accept Defendant's Statement of Material Facts as true without examining the record or to grant Defendant's Motion for Summary Judgment because Plaintiff failed to properly respond thereto, it cannot do so. This Court must make an independent review of the record before deciding Defendant's Motion for Summary Judgment. It must be noted, however, that "[t]here is no

burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995).

Though the Eleventh Circuit treats noncompliance with local rules with a degree of leniency, Local Rule 56 still requires that Defendant's twenty-four (24) proffered material facts be deemed admitted, due to Plaintiff's failure to directly counter them with specificity. Local Rule 56 is intended to instruct the parties on how best to assist the Court in identifying disputed material facts. It is necessary for a responding party to submit a Statement of Material Facts that complies with Local Rule 56. Failure to adhere to the Local Rules of this Court regarding responses to properly filed summary judgment motions not only unduly burdens the Court but also unnecessarily jeopardizes the claims' survivability. It is not the Court's responsibility to expend valuable and limited resources and time to scour the record and compose a proper opposing statement of material facts. To conclude otherwise would make the adversarial system, especially where both sides are represented by counsel, essentially meaningless.

## III.    Title VII Racial Discrimination (Count I)

Count I of the Complaint alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq.*, for which liability is provided by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff asserts that Defendant's failure to select him for the Pre-Sell Account Manager opening posted on May 4, 2007 was improperly motivated by racial animus. (Doc. 23 at 1).

## A.    Title VII Standard

Three methods exist for a plaintiff to establish a prima facie case of discrimination under Title VII: "by presenting direct evidence of discriminatory intent; by meeting the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); or by demonstrating through statistics a pattern of discrimination."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).  Direct evidence of discrimination would be evidence that, if believed, would prove the existence of a fact in issue without inference or presumption.  *Id.* (providing an example of direct evidence of age discrimination as a management memorandum stating, "Fire Early – he is too old").

Plaintiff has presented no statistical evidence in this case; nor has he presented any direct evidence of discriminatory intent.  Plaintiff, therefore, must prove his case by satisfying the inferential test set forth in McDonnell Douglas.  The McDonnell Douglas burden-shifting analysis proceeds as follows: (1) a plaintiff must first make out a prima facie case by establishing the four elements articulated below; (2) the burden then shifts to the defendant to produce legitimate, nondiscriminatory reason(s) for the alleged adverse employment action; and (3) the burden shifts back to the plaintiff to establish that any proffered reason(s) is pretextual. McDonnell Douglas, 411 U.S. at 802-04.  "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut *each* of the reasons to survive a motion for summary judgment."  Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007) (emphasis added).

Despite the shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the

plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). To further explain a plaintiff's final burden, the Eleventh Circuit provides that:

> [T]he plaintiff retains the burden of persuasion. [He] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1375-76 (11th Cir. 1996) (citing Burdine, 450 U.S. at 256); *see also* Arrington v. Cobb County, 139 F.3d 865, (11th Cir. 1998) (citing Burdine in support of the proposition that "should the defendant carry [the] burden, the plaintiff must show *by a preponderance of the evidence* that the defendant's proffered explanation was a pretext for discrimination" (emphasis added)).  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Mayfield, 101 F.3d at 1376-77.

## B.    Plaintiff's Prima Facie Case

A Title VII plaintiff may establish a prima facie case of racial discrimination in the failure-to-promote context by showing: "(1) that the plaintiff belongs to a protected class; (2) that [he] applied for and was qualified for a promotion; (3) that [he] was rejected despite [his] qualifications; and (4) that other equally or less-qualified employees outside [his] class were promoted." Bryant v. Dougherty County Sch. Sys., No. 09-15509, 2010 WL 2399351, at *2 (11th Cir. June 15, 2010) (slip copy) (quoting Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010)).

Regarding the second element, the Court finds that the only facts proffered by Plaintiff to assert his qualifications for the high-level Pre-Sell Account Manager position are: his four years of employment with Defendant as an entry-level Bulk Merchandiser and low-level Full Service Representative; his experience talking with customers; his B.S. in Business Management from a four-year college; the job description's statement that such a degree was preferred; and his experience making sales presentations to customers at Home Depot and Sam's Wholesale. (Pl.'s Aff. at ¶¶ 2, 3, 4, 7, 9). The May 4, 2007 posting for the position, however, contained additional requirements and preferences that Plaintiff fails to assert his application satisfied. (*See* Doc. 20-7 at 7 to 8). The declaration of the person making the hiring decision, Ronald Downs, describes the areas where Plaintiff's application was lacking and states outright that "I did not believe [Plaintiff] qualified for the pre-sell position." (Downs Decl. at ¶ 7). Plaintiff has proffered no evidence, other than his self-serving affidavit, showing that Downs's evaluation was even facially incorrect. The law states that Plaintiff may not defeat summary judgment by relying on non-supportive affidavits or bare and self-serving allegations, *see* <u>Bryant v. Rich</u>, 530 F.3d 1368, 1382 (11th Cir. 2008), but that is all Plaintiff provides. The Court finds that Plaintiff has failed to satisfy his burden of showing that he was qualified for the promotion to the May 4, 2007 Pre-Sell Account Manager position.

Regarding the fourth element, the Court finds that Plaintiff has proffered no facts showing that Steve Morris, the white employee who was given the May 4, 2007 Pre-Sell Account Manager position, was equally or less qualified than Plaintiff. The record shows that the only category in which Plaintiff was superior to Morris was in education: Plaintiff possessed a four-year degree while Morris had attended community college. The job posting, however, stated only that "4 year college degree is preferred," not that it was required. In every other

*required* category – tenure with Defendant, current position in Defendant's jobs hierarchy, internal and external sales experience, knowledge of product, etc. – Morris was superior. The objective evidence on the record supports Downs's subjective statement that "[i]n my opinion, Mr. Morris was the most exceptional and qualified applicant." (Downs Decl. at ¶ 8). Astoundingly, Plaintiff's self-serving affidavit fails to even make a statement contesting that Morris was more qualified than Plaintiff. (*See generally* Pl.'s Aff.). The Court finds that Plaintiff has failed to satisfy his burden of showing that the white employee promoted to the May 4, 2007 Pre-Sell Account Manager position was equally qualified or less qualified than Plaintiff.

"The central inquiry in evaluating whether the plaintiff has met his initial burden in a Title VII case is whether the circumstantial evidence presented is sufficient to create an inference of discrimination. … While [Plaintiff] has testified that he felt discriminated against, his opinion, without more, is not enough to establish a prima facie case of race discrimination." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997) (citation omitted). Because the Court finds that Plaintiff has failed to satisfy the second and fourth elements of his prima facie failure-to-promote case, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED** as to Count I.

### C.     Defendant's Legitimate Nondiscriminatory Reasons

Assuming that Plaintiff had established a prima facie case regarding the non-promotion, the burden would shift to Defendant to produce or proffer some legitimate, nondiscriminatory reason for its decision. *See* McDonnell Douglas, 411 U.S. at 802-04. To satisfy its burden of production, Defendant proffers that the decision to hire Morris over Plaintiff was "because Morris was the most qualified and exceptional candidate" and was not racially motivated. (Doc. 20-2 at 8).

The Court finds that Defendant has satisfied its burden to produce a legitimate,

nondiscriminatory reason for Plaintiff's non-promotion.

### D.    Plaintiff's Proof of Pretext

Assuming that Plaintiff had established a prima facie case regarding the non-promotion, under the burden-shifting framework described above the burden now rests on Plaintiff to sufficiently show that Defendant's proffered legitimate reason for Plaintiff's non-promotion was a pretext for discrimination. *See* McDonnell Douglas, 411 U.S. at 804. Plaintiff's burden is to show both that (1) Defendant's proffered reasons were false and (2) discrimination was the real reason for the failure to promote. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 n.4 (1993). Of course, Plaintiff may survive summary judgment by establishing a genuine issue of material fact as to certain facts and/or evidence; Plaintiff may not, however, meet this burden by relying on non-supportive affidavits or bare and self-serving allegations. *See* Bryant v. Rich, 530 F.3d 1368, 1382 (11th Cir. 2008). The federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1501 (11th Cir. 1991). Rather, the Court's interest lies in whether the plaintiff produced sufficient evidence to demonstrate an actual intent on the part of defendant to discriminate on the basis of a protected trait. *Id.* at 1501-02.

In reviewing Plaintiff's Response (Doc. 23), the Court, to its surprise, finds no response to Defendant's asserted legitimate, nondiscriminatory reason for Plaintiff's non-promotion. (*See generally* Doc. 23). The "PRETEXT" section of Plaintiff's Response addresses only an alleged "discriminatory plan to terminate the Plaintiff," which relates to the Title VII retaliation claim raised in Count III; the Response's "PRETEXT" section does not address any non-promotion. (*See generally* Doc. 23 at 8-9). The second page of Plaintiff's Response provides that "Mr. Morris was not much more exceptional applicant for the May 4, 2007 position" and that Plaintiff

"will show that … he was not awarded the Pre-Sell Manager position because of his race," which may serve as an attempt at establishing pretext even though these assertions are well separated from the Response's "PRETEXT" section. (Doc. 23 at 2). Nevertheless, these assertions are not accompanied by any evidentiary support. Therefore, pursuant to the framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the Court finds that Plaintiff has failed to satisfy his burden regarding his non-promotion. Thus, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED** as to Count I.

Because the Court finds that Plaintiff failed to satisfy his burden, under the framework created by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), of establishing circumstantial evidence of racial discrimination violative of Title VII in his non-promotion to the Pre-Sell Account Manager position, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED** as to Count I of the Complaint (Doc. 1).

## IV.    Title VII Retaliation (Count III)

Count III of the Complaint alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). (Doc. 1 at ¶ 8). Under Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, a plaintiff must show that (1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is some causal relationship between the two events." <u>Johnson v. Booker T. Washington Broadcasting Service, Inc.</u>, 234 F.3d 501, 507 (11th Cir. 2000) (citing <u>Holifield v. Reno</u>, 115 F.3d 1555, 1566 (11th Cir.1997) (per curiam)). If a plaintiff makes out his prima

facie case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Id.* (quoting Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)). If the defendant offers legitimate reasons, then "the presumption of retaliation disappears" and "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Id.* (quoting Sullivan, 170 F.3d at 1059).

In the interest of judicial economy, the Court will assume that Plaintiff can make out his prima facie case, and that the alleged retaliatory action was the September 15, 2008 double-checking of Plaintiff's inventory and the mileage and overtime required for Plaintiff to complete his daily route. Defendant asserts the legitimate reasons for the actions that: (i) the double-check of Plaintiff's inventory was the result of a random drawing of lots that occurs every day and that had nothing to do with race, and (ii) Plaintiff's route is long due to it being a rural route, Plaintiff's route changed in 2008 due to the use of a computer route-creation program to increase efficiency, Plaintiff could have applied for another route but did not, and other employees have more time-consuming routes. The Court finds that Defendant has produced legitimate nondiscriminatory reasons.

The "PRETEXT" section of Plaintiff's Response only refers the Court to "[t]he evidence" – not specific evidence with citations to the record – and claims that his affidavit "demonstrates that Defendant had a discriminatory plan to terminate Plaintiff." (Doc. 23 at 9). The Court finds that this showing – or, rather, complete lack thereof – fails to satisfy Plaintiff's burden. On page three of Plaintiff's Response, not in his "PRETEXT" section, he asserts that he "did not pick a playing card with an X," that the truck was double-checked in Buena Vista, Georgia, rather than on Defendant's premises "which is very uncommon because Mr. McGee asked other drivers,"

and that his route "increased 19 to 22 stops per week while the other route drivers only increase [sic] about four (4) stops." (Doc. 23 at 3). The Court also notes in Plaintiff's Affidavit his statement that he "did not apply for other positions because I was afraid of retaliation." (Pl.'s Aff. at ¶ 10). The Court repeats that Plaintiff may not defeat summary judgment by relying on non-supportive affidavits or bare and self-serving allegations, *see* <u>Bryant v. Rich</u>, 530 F.3d 1368, 1382 (11th Cir. 2008), but that is all Plaintiff provides. Plaintiff cites no evidence on the record that supports his assertions. Because the Court finds that Plaintiff has failed to establish the necessary circumstantial, direct, or statistical evidence that he was retaliated against in violation of Title VII, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED** as to Count III of the Complaint (Doc. 1).

## V.     Punitive Damages (Count VI) and Attorney's Fees and Expenses (Count VII)

The Court, *supra*, finds that Plaintiff has failed to establish any genuine issue of material fact as to his Title VII racial discrimination (Count I) or Title VII retaliation (Count III) claims, and has thus granted summary judgment in favor of Defendant as to those claims. Because the Court finds that Plaintiff is not entitled to any relief, Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED** as to the punitive damages (Count VI) and attorney's fees and expenses (Count VII) claims raised in Plaintiff's Complaint (Doc. 1).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 20) is

**GRANTED**.  It is herby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his

Complaint, and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this __27th__ day of September, 2010.


 _/s/ W. Louis Sands_____
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**